AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
для the
District of Maryland

FILED ENTERED
LODGED RECEIVED

NOV 2 5 2013

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| YOGESH K. PATEL | ) | Case No. 13-2806 TJS |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __July 1, 2009 to June 12, 2013__ in the county of __Montgomery__ in the
_____ District of __Maryland__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sec. 1343 | wire fraud |

This criminal complaint is based on these facts:
see attached affidavit

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Jason Powers
*Printed name and title*

Sworn to before me and signed in my presence.

Date: November 25, 2013

_____
*Judge's signature*

City and state: Baltimore, Maryland                Timothy J. Sullivan, United States Magistrate Judge
*Printed name and title*

**13-2805TJS  13-2806TJS**

IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF MARYLAND**

_____FILED _____ENTERED
_____LODGED _____RECEIVED

NOV 2 5 2013

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

Your affiant, Jason Powers, being duly sworn and deposed, states as follows:

## I. INTRODUCTION

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for federal felony offenses.

2. I am a Special Agent with The U.S. Small Business Administration, Office of Inspector General (SBA-OIG). I am assigned to the Washington Field Office for SBA-OIG. During my tenure with SBA-OIG, I have been assigned to investigate a variety of white-collar offenses, to include: business loan fraud, procurement fraud, bank fraud, wire fraud, and mail fraud. I have personally prepared and participated in the execution of search and arrest warrants involving violations of federal criminal laws. During the execution of these warrants, I have recovered and participated in the recovery of items of evidence which were later utilized in the successful prosecution of criminal offenses.

3. I am presently participating in the investigation of **YOGESH K. PATEL**, of United Native Technologies, Inc. (UNTI), and W.B., of Confederate Group LLC (CG) and Total Barrier Works (TBW).

4. The statements in this affidavit are based on my personal knowledge and information obtained from SBA-OIG, the U.S. Department of the Interior, Office of Inspector General (DOI-OIG) and the U.S. Air Force, Office of Special Investigations (AFOSI), and from using

1

numerous investigative techniques, as well as information received from persons with knowledge regarding relevant facts, and from our review of records and documents.

5. This affidavit is made in support of a criminal complaint charging **YOGESH K. PATEL** with knowingly and willfully executing and attempting to execute a scheme and artifice to defraud the United States and to obtain money from the United States by means of material false and fraudulent pretenses and representations or promises by transmitting or causing to transmit by means of wire communications in interstate commerce an email on December 21, 2009, in violation of 18 U.S.C. § 1343 (wire fraud).[1]

6. This affidavit is also made in support of an application for the issuance of a search warrant to search 652 Chestertown Street, Gaithersburg, MD 20878 (hereafter the "**TARGET LOCATION**"). The residence is the business address of UNTI and is owned by **PATEL**. There is probable cause to believe that evidence and instrumentalities of these violations, described more particularly in Attachment B, are within the premises identified in Attachment A.

---

[1] The full text of 18 U.S.C. § 1343 is as follows:
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

## II. PROBABLE CAUSE

7. On June 12, 2013, United States Magistrate Judge Timothy J. Sullivan authorized the search and seizure of email accounts associated with **PATEL**. A copy of the affidavit in support of those warrants is attached hereto as Exhibit C and incorporated herein by reference.

8. The National Park Service (NPS) is a U.S. federal agency administered by the U.S. Department of the Interior (DOI). NPS manages all national parks, many national monuments, and other conservation and historical properties.

9. Congress has provided the NPS with authority to enter into various types of agreements with other federal bureaus; with state, county, and municipal governments; and with private companies, corporations, groups, and individuals.

10. The U.S. Department of the Interior, Office of Inspector General (DOI-OIG) conducts, supervises, and coordinates investigations that scrutinize allegations involving contractors, grantees, or other entities doing business with and receiving funds from DOI.

### A. United Native Technologies (UNTI) and 8(a) Pass Through Fraud

11. According to the SBA's website, the "[t]he 8(a) Business Development Program is a business assistance program for small disadvantaged businesses. The 8(a) Program offers a broad scope of assistance to firms that are owned and controlled at least 51 percent by socially and economically disadvantaged individuals." Participants in the 8(a) program can receive sole source contracts that are reserved for companies in the 8(a) program.

12. Based on my training and experience I know that a common type of procurement fraud involves a company, that may or may not be a disadvantaged business, using a legitimately disadvantaged business as a "shell" or "front" company for the purpose of obtaining government set aside contracts. The company then performs the majority of the work and retains the

majority of the profits. This scheme generally involves multiple false statements and/or claims to the federal government.

13.    On July 8, 2009, the NPS awarded a purchase order contract in the amount of $63,040.00 to Confederate Group LLC, (DUNS# 626910728), DBA Total Barrier Works (TBW), 60 E Simpson Ave., Jackson WY, 83001, for the repair and maintenance of the security barricade system at the Boston National Historical Park, Charlestown, MA. Between July 7, 2009, and the present date this contract has been modified on two occasions bringing the total contract value to $130,376.53.

14.    On December 5, 2011, the DOI-OIG opened an investigation into allegations made by a former employee (hereafter "Employee 1") of Total Barrier Works (TBW). Employee 1 worked for TBW from May 25, 2010 to July 22, 2011.

15.    Employee 1 told investigators that during the period when he worked for TBW, W.B., the owner and president of TBW, posted, or directed Employee 1 to post, advertisements on Craig's List seeking service disabled veterans and socially and economically disadvantaged individuals and encouraging them to apply to participate in the U.S. Small Business Administration (SBA) "8(a)" program. Craig's List is a website where individuals and businesses can post items for sale, job openings and other business opportunities.

16.    Employee 1 alleged that once a company located through Craig's List was certified under the 8(a) program, W.B. used that company to bid on federal contracts that are reserved for companies in the 8(a) program in exchange for paying the individual between 4-5 percent of the contract value. According to Employee 1, all of the work was done by TBW. TBW was not an 8(a) company and therefore was ineligible to apply for sole source and other 8(a) set-aside contracts.

17. Based on activities that Employee 1 witnessed and was a party to during his employment with TBW, he believes that W.B. may have this type of arrangement with the owners of several companies to include United Native Technologies (DUNS#- 122148765).

18. United Native Technologies, Inc. (UNTI) is an 8(a) certified business owned by **PATEL**. UNTI's business address is the **TARGET LOCATION**. The SBA certified UNTI as an 8(a) company as of November 29, 2005. The company is scheduled to "graduate" from the 8(a) program on November 29, 2014.

19. A review of the FPDS-NG and the Electronic Document Access (EDA) shows that between October 2010 and July 2013, UNTI has been awarded $2,268,393.10 in U.S. Government contracts.

20. A review of e-mail messages obtained during the course of this investigation support the assertion that W.B. uses **PATEL** and UNTI as a pass-thru to obtain 8(a) set aside contracts in exchange for 5 percent of the set-aside contracts value.

21. The email exchanges summarized below occurred during a period when **PATEL** lived and worked in Maryland and W.B. lived and worked in California.

22. In an e-mail from **PATEL** to W.B., dated December 21, 2009, **PATEL** wrote, "Also I talked to the people and Dunn & Bradstreet today and they will update the CCR record within 2 business days to reflect that UNTI is doing business as Total Barrier Works..." The investigation has not uncovered any evidence that TBW was another name for UNTI. To the contrary, both were distinct businesses, UNTI owned and controlled by **PATEL** and TBW owned and controlled by W.B.

23. In a series of e-mails between **PATEL** and W.B. dated April 19, 2011, with a subject line that reads: "IMPORTANT: new SBA Rules on Submission of Financial Statements and Tax

Returns" **PATEL** stated "P.S. I told you there is a lot of compliance work for me (to earn my 5%)."

24. In an series of e-mails between Employee 1, W.B. and **PATEL** between May 5, 2011 and May 10, 2011, Employee 1 stated that $36,900 from a contract at "Andrews" [Andrews Air Force Base] was deposited into WF 3340 [Wells Fargo account ending in 3340, in the name W.B. and Confederate Group]. Employee 1 asked "What is the percentage you agreed to pay Yogi for this contract? This information is needed to set up a payable for the 5/13/2011 pay date." **PATEL** responded to this e-mail by providing UNTI's checking account number ending in 7319, routing number 055003201, at Wachovia Bank, and stated "Please let me know if you need anything else or if something changes in regards to the Friday direct deposit."

25. In a series of e-mails between **PATEL**, and W.B. dated between June 21, 2011 and June 23, 2011:

>    a. W.B. asked **PATEL** to prepare a "Cap statement" [capabilities statement] for a contract at Andrews AFB;
>
>    b. **PATEL** responded stating "...please let me know if they are considering this opportunity as an 8(a) and the additional value/$ to you for this marketing effort (can be realized only if awarded the work)? So basically, what's in it for me in addition to **passing it through UNTI...**" (emphasis added);
>
>    c. **PATEL** further responded by asking W.B. "...how do u want to work the compensation for the additional work beyond **a pass through of the 8(a)**?" (emphasis added);
>
>    d. W.B. responded stating "If we get this job you will make money for the next five years from doing a couple hours of work....there's probably will not be much more you ever have to do other than the filing's 8(a);"
>
>    e. **PATEL** responded stating "the only problem/rub is with all the work I've done previously with you over the past 4 years; I've only made about $2,000;"

6

      f.      W.B. responded stating that "I am not aware of 'all the work I've done previously with you over the past 4 years; I've only made about $2,000.'" Perhaps my memory is really bad but I do not know what work you are referring to? And when Andrew AFB is finished from my experience of service calls and existing contract amount you will get well over 22,500.00 and never have to lift another finger;"

      g.      **PATEL** responded citing work he had not been compensated for with regard to assisting W.B. on proposals and letters. **PATEL** went on to say "Sorry, I just didn't want to continue to do additional work beyond the **pass through work** without acknowledgement and compensation....Finally I feel disrespected when you continue to think there isn't much work involved in **passing contracts through UNTI**. Maybe you forget the countless hours spent with Liam, and the future hours that will be spent in aggregating your contracts with mine, keeping a proper 8(a), non-8(a) and commercial work; all to be reported in detail to SBA annually." (emphasis added); and

      h.      W.B. responded stating "If anything these project [sic] you are profiting on make it worthwhile, and also may help you continue your 8(a) recognition.... The statements look very nice and maybe too much, **I hope they don't ask for backup!**" (emphasis added).

26.    In a series of e-mails between **PATEL**, Employee 1, and W.B. dated between May 14, 2011 and September 7, 2011:

      a.      **PATEL** requested confirmation that there was an error made in calculating the 4.5% of a $44,515.50 payment received from Andrews AFB. **PATEL** requested that "you will make up the additional difference of $228.16 and add it onto the next cycle's payment. Can you please confirm this and when the next payment cycle is expected?"; and

      b.      **PATEL** forwarded the above referenced e-mail to W.B. on September 7, 2011, stating "... please send me access to view the bank account on-line; I can start to monitor and set up my cash flow verifications and balance statements and how I'm going to represent everything for SBA and later to be verified with what your accountant sends me."

7

27. In an e-mail from **PATEL**, to D.F. with a "cc" to W.B., dated September 28, 2011, **PATEL** requested verification of the 4.5% he should be receiving from a payment that was received for work on the Andrew's contract. **PATEL** further stated "Please forward UNTI Banking access (set up by TBW) for me to begin tracking and balancing cash flow in preparation for the upcoming SBA 8(a) annual review and audit."

28. In an e-mail from **PATEL** to W.B. dated November 3, 2011, **PATEL** stated:

> "I thought you said you were almost finished with 2009 and 2010 taxes?
>
> I can't express the urgency of this matter.
>
> When are you going to give me access to the UNTI Bank Account? Are you having your other existing contracts pay to the UNTI account as we agreed to? If we don't have at least 50% of our non-8(a) revenues hit the UNTI account; I will lose my 8(a) certification and face **fraud and penalty charges** based on how this was done (since you have yet to show me the account or give me access)." (emphasis added)

29. In a series of e-mails between **PATEL** and W.B. between January 16, 2012 and January 17, 2012:

> a. **PATEL** stated "...please let me know how you plan to merge and legally show previous and future business with UNTI (including how you plan to do the 2011 taxes and in providing me with the 2010 return). Then please let me know what percentage you are willing to pay on this particular effort (since we initially worked together in building this business from me researching and drafting the initial capabilities)." I believe Andrews may want to do this as an 8(a) set-aside or are particularly targeting us and therefore we may be able to price in the additional compensation.
>
> b. W.B. responded to **PATEL** stating "At this time you are receiving 4.5% of the total job, which means you get 4.5% of repair parts that TBW buys and can't mark up, material, insurance, payroll, overhead etc., and all other hard money expenses that TBW has that you actually get 4.5% of."

30. In an e-mail message from W.B. to R.E., dated January 18, 2012, W.B. stated:

8

"I have found myself in a situation I need immediate help with, Confederate Group LLC started doing 8(a) contracts under a company called United Native Technologies Inc. dba Total Barrier Works. These contracts are my contracts that I received through my efforts and contacts, UNTI (Yogesh Patel) had nothing to do with them. I met Yogesh Patel in Costa Rica on Vacation and he had a 8(a) company he was doing nothing with. He told me I could try to get projects under his 8(a) and we made a deal for me to give him 4.5% of [sic] the top of every payment I received. I since gave him view only access to my Wells Fargo account so he could monitor the money we received toward these 8(a) contract.

Since starting this agreement I have received 4-8(a) contracts for Andrews AFB, GSA Potomac Center, Newport RI Navel Center and Nellis AFB. These contracts add up to about $284,615.00 per year for the next 5 years. Since this took place Yogesh **PATEL** went into CCR and changed the banking to route WAWF payments directly into his account. He notified us a few weeks ago that he did this and received a payment from Andrews AFB for about 6K. Since then there has been billing and he should have received or will be receiving very soon another 91,486.66 of my money in his account. This is Confederate Group Money and he has expended not one dime toward this nor any effort. At this time I trust Yoge (Yogesh Patel) to do the right and honest thing. But only 4.5% of this money is rightfully his, money.

Now he wants to know how we are handling this agreement. There are a few factors relating to this, one being UNTI has to do 50% non 8(a) work to match the 8(a) work received. Since he does no work at all I need to merge some of my contracts into his company. Also taxes, Yoge want to know how we handle taxes. So do we need to somehow merge, say the UNTI purchased Confederate Group LLC or what. He probably will not relieve my funds until this is agreed and in writing. Also another important factor is Confederate Group just received a very large nationwide (50 states, or 57 according to Obama) with Corp of Engineers, and are about to be awarded another worldwide contract with the Navy. So a merger is questionable."

31. On February 8, 2012, R.E. responded stating "Your email below is very troublesome in that it subjects the current Members (owners) of The Confederate Group, LLC to extreme financial and legal liability. The members cannot and will not assume the extreme financial and

9

legal liability." R.E. attached documents formally withdrawing their representation and membership from several companies to include The Confederate Group LLC.

32. W.B. responded stating that the letter he wrote "created some misunderstandings." W.B. stated that "I have four projects that I am running under his [**PATEL**'s] company (UNTI) that were received because of 8(a). He has control over his company and therefore can change bank account information in the CCR (Contractor Registry) which he directed to pay to UNTI to follow 8(a) correct procedure. All projects are billed and paid directly to bank account on record under WAWF (Wide Area Work Flow) system. This directed all payments to United Native Technology bank account instead of Confederate Group. **PATEL** offered to send CG LLC their 95.5% of funds and I told him no, not until we figure out how to do this correctly. Confederate Group is simply doing the work for UNTI under a subcontract and need to set it up correctly for taxes and 8(a) compliance along with PSE LLC format."

33. In an e-mail message from **PATEL** to W.B. dated January 30, 2012, **PATEL** wrote, "Please let me know what the person you were supposed to talk to weeks ago recommended we do for merging our future finances, banking and taxes (company). Since I have been asking you how you'd like this to be done since the original payments back in May 2010, please marry this urgency now to your urgency in properly transferring funds from the original UNTI bank account to TBW, and more important the urgency in getting me the copy of the TBW 2010 tax return and how you would like to proceed with doing taxes for 2011 immediately, as the UNTI return is due March 14, 2012."

## B. The TARGET LOCATION, 652 Chestertown Street, Gaithersburg, MD

34. The System for Award Management (SAM) is the Official U.S. Government registration system for procurement systems and Catalog of Federal Domestic Assistance. Recently, the capabilities of the Central Contractor Registration (CCR), Federal Register (FedReg), Online Representations and Certifications Applications (ORCA), and the Excluded Parties Listing System (EPLS), were combined under SAM.

35. A review of the SAM record for UNTI on August 15, 2013, revealed **PATEL** is listed as the Electronic and Government Business point of contact. SAM further lists the physical address for UNTI as the **TARGET LOCATION**.

36. A review of documents submitted by **PATEL** to the SBA revealed that between 2005 and 2012, **PATEL** has used the **TARGET LOCATION** on numerous documents submitted associated with his SBA 8(a) status.

37. A review of contract documents submitted by UNTI to the United States Air Force revealed that between 2010 and 2013, UNTI has used the **TARGET LOCATION** to correspond with contract personnel.

38. On November 24, 2013, your affiant viewed a website for UNTI d/b/a Total Barrier Works at http://www.unticorp.com. That website lists the **TARGET LOCATION** as the physical address for UNTI and gives W.B.'s name and a toll free number as the telephone contact for UNTI.

## CONCLUSION

39. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that **PATEL** knowingly and willfully executing and attempting to execute a scheme and artifice to defraud NPS and the SBA and to obtain money from NPS by

11

13-2805TJS     13-2806TJS

means of material false and fraudulent pretenses and representations or promises by transmitting or causing to transmit by means of wire communications in interstate commerce an email on December 21, 2009, in violation of 18 U.S.C. § 1343 (wire fraud)..

40. Further, there is probable cause to believe that evidence of the commission of criminal offenses, namely, violations of Title 18, United States Code, Section 1343 (wire fraud) is located at the **TARGET LOCATION**, and this evidence, listed in Attachment A to this affidavit, which is incorporated herein by reference, is contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

41. Your affiant, therefore, respectfully requests that the attached complaint and warrant be issued.

## REQUEST FOR SEALING

42. Because this investigation is continuing, disclosure of the search warrant, this affidavit, and/or this application and the attachments thereto will jeopardize the progress of the investigation. Accordingly, the undersigned requests that the Court issue an order that the criminal complaint, search warrant, this affidavit and all attachments thereto be filed under seal until further order of this Court.

SPECIAL AGENT JASON POWERS
United States Small Business Administration
Office of Inspector General

Subscribed and sworn to before me,
this 25th th day of November 2013.

THE HONORABLE TIMOTHY J. SULLIVAN
United States Magistrate Judge
District of Maryland

12